IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW SAMUEL GUILLORY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CONTRA COSTA COUNTY SHERIFF<br>WARREN E. RUPF, et al.,<br><br>　　　　Defendants. | No. C 05-4395 CW (PR)<br><br>ORDER DENYING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT<br>AND REFERRING CASE TO PRO SE<br>PRISONER SETTLEMENT PROGRAM<br><br>(Docket no. 28) |

INTRODUCTION

Plaintiff Andrew Samuel Guillory, a state prisoner currently incarcerated at Mule Creek State Prison, brought this 42 U.S.C. § 1983 action against Contra Costa County Sheriff Warren E. Rupf and two Sheriff's Deputies.  Plaintiff alleges that in February, 2005, while he was incarcerated at the Martinez Detention Facility (MDF) as a post-arraignment pretrial detainee, Defendants Deputies Foley and Gray used excessive force in violation of his civil rights.  In an Order dated March 22, 2006, the Court found Plaintiff's allegations stated a cognizable excessive force claim against Defendants Foley and Gray.  All claims against Defendant Rupf were dismissed because Plaintiff failed to allege facts sufficient to state a claim for supervisory liability.

Defendants Foley and Gray move for summary judgment on the ground that no triable issue of material fact exists and that they are entitled to judgment as a matter of law.  Defendants also claim

that Plaintiff failed to exhaust available administrative remedies and that they are entitled to qualified immunity. Plaintiff opposes the motion.

For reasons discussed below, the Court DENIES Defendants' motion for summary judgment.

FACTUAL BACKGROUND

I. Undisputed Facts

The following facts are based on Plaintiff's verified complaint[1] as well as the affidavits and evidence submitted by Defendants and Plaintiff in support of and in opposition to the motion for summary judgment.

On February 9, 2005, Plaintiff was housed in the Q Module at MDF. (Gray Decl. ¶ 3.) Defendant Gray was on duty and assigned to the Q Module. (Id.)

At approximately 6:00 PM, Plaintiff approached Defendant Gray and told him he wanted to speak to the jail's mental health staff.[2] (Compl. at 7; Gray Decl. ¶ 3.) Defendant Gray explained to Plaintiff that in the absence of an emergency, Plaintiff was required to complete an inmate request form and wait for an appointment to see mental health staff. (Gray Decl. ¶ 3.) Defendant Gray then asked Plaintiff if he intended to hurt himself, and Plaintiff said, "Yes, if that is the only way I can see mental

---

[1] Plaintiff has attached twelve handwritten pages and various exhibits after page four of his complaint, but he failed to label them with page numbers. The Court has numbered his handwritten pages, beginning with page number "5" and ending with page number "16".

[2] Plaintiff claims that he has bi-polar disorder, and that he has been suffering from mental health problems since he was seven years old. (Compl. at 6, 11.)

2

1 health." (Compl. at 7; Gray Decl. ¶ 3.)  Defendant Gray then
2 directed Plaintiff to take a seat while he made a phone call.
3 (Compl. at 7; Gray Decl. ¶ 4.)  Defendant Foley arrived to escort
4 Plaintiff to a safety cell at the intake unit.  (Compl. at 7; Foley
5 Decl. ¶ 3.)  He handcuffed Plaintiff before proceeding to the
6 intake unit. (Compl. at 7; Foley Decl. ¶ 4.)
7 II.  Disputed Facts
8     A.  Defendants' Version
9     According to Defendants, after Plaintiff was handcuffed,
10 Defendant Foley escorted Plaintiff to the intake unit while
11 Defendant Gray stayed behind.  (Gray Decl. ¶ 5; Foley Decl. ¶ 5.)
12 Defendant Foley used a standard control hold to guide Plaintiff
13 toward the module door, which "opens out into a hallway area and
14 must be electronically unlocked by staff at a central location."
15 (Foley Decl. ¶ 5.)  As Plaintiff and Defendant Foley approached the
16 door, Plaintiff turned away from Defendant Foley, attempting to
17 break free from the control hold, and shouted at Defendant Gray.
18 (Id. ¶ 6.)  Defendant Foley forced Plaintiff towards a nearby wall
19 "to re-establish [his] control" and "pushed [Plaintiff] forward
20 into the unlocked door to open it, as an alternative to releasing
21 [his] control of [Plaintiff] and reaching over him or around him to
22 open the door. . . ."  (Id. ¶ 6.)  As he did so, Plaintiff kicked
23 open the door and pushed back against Defendant Foley, causing them
24 to fall to the floor in the hallway. (Id.)
25     According to Defendant Gray, he saw Plaintiff kick the door
26 open.  (Gray Decl. ¶ 5.)  Then he saw the door close quickly and
27 strike both Plaintiff and Defendant Foley.  (Id.)  Defendant Gray
28 saw them fall to the floor and "perceived that Defendant Foley

3

could be at a dangerous disadvantage when on the floor with an inmate." (Id.)  He decided to assist Defendant Foley regain control over Plaintiff, who was "resisting." (Id.)

According to Defendant Foley, he "lost control" of Plaintiff after they fell to the floor. (Foley Decl. ¶ 7.)  Plaintiff "resisted [his] attempts by rolling from side to side" and by "bringing his legs under him in an attempt to stand up." (Id.)  He was joined by other deputies, including Defendant Gray and Deputy Duggins, who assisted him in controlling Plaintiff by holding Plaintiff on the floor with their body weight. (Foley Decl. ¶ 7; Ex. A at CC 28.)  Defendants brought Plaintiff to his feet and escorted him to a holding cell at the intake unit without further incident. (Gray Decl. ¶ 5; Foley Decl. ¶ 7.)

Defendant Gray states that, once they reached the intake unit, Plaintiff "spoke with Deputy Murphy and told her he was not going to harm himself, and just wanted to talk with Mental Health [Staff]." (Gray Decl. ¶ 5.)  Deputy Murphy decided to put Plaintiff in a holding cell until mental health staff could see him. (Id.)

B. Plaintiff's Version

According to Plaintiff's version of events, as they approached the module door, Defendant Foley "put his hand on the back of [Plaintiff's] head and pushed extremely hard slamming [his] head into the door." (Id.)  Defendant Foley then used Plaintiff's body to open the door. (Id.)  After the door opened, Plaintiff "was slammed on the ground with nothing to stop the force because [his] hands were cuffed behind [his] back." (Id.)  He was then "punched very hard in [the] back by one of the deputies (Foley or Gray)."

4

1  (Id.)  A woman from classification saw Defendant Foley "grinding
2  [Plaintiff's] face in the ground" and inquired about what was going
3  on.  (Id. at 7-8.)  Defendant Foley told the woman to close the
4  door, and then jerked Plaintiff back to his feet and resumed
5  escorting him to the intake unit.  (Id. at 8.)
6  　　As a result of Defendants' actions, Plaintiff suffered a
7  bruise to his back and sharp pains in his neck, as well as
8  sleeplessness and anxiety.  (Id. at 6.)
9  III. Exhaustion of Administrative Remedies
10  　　On February 10, 2007, Plaintiff filed an inmate request form,
11  stating he was "slammed on the ground for no reason" and "the
12  deputy also used [his] body and head to open the door."  (Rubin
13  Decl., Ex. C.)  He added "Im [sic] having a lot of bad thoughts and
14  memories.  I need to see someone A.S.A.P.  Something bad is going
15  to happen."  (Id.)
16  　　Pursuant to MDF policy, the same form is used for requests and
17  grievances.  (Rubin Decl. ¶ 4.)  Because Plaintiff marked the box
18  labeled "Request" on the form, MDF staff did not treat Plaintiff's
19  inmate request form as a grievance and did not call for an
20  investigation into the alleged incident.  (Id. ¶ 6.)  Instead, MDF
21  staff responded to Plaintiff's request by transferring him to the M
22  module.  (Rubin Decl., Ex. C.)
23  　　Plaintiff wrote to internal affairs because there was no
24  investigation into the alleged use of excessive force stated on his
25  inmate request form.  (Compl. at 5.)  On March 4, 2005, Plaintiff
26  received a written response to his letter from the Office of the
27  Sheriff, County of Contra Costa.  (Attach. to Compl., Letter from
28  Lt. Eric Navarro, Professional Standards Unit, dated Mar. 4, 2005.)

5

According to the letter, Plaintiff's complaint was "vague, lack[ed] specific information and [did] not warrant an investigation by the Professional Standards Unit," and his concerns "would be best addressed through the Inmate Grievance Process." (Id.)  He was further informed that his complaint would be "forwarded to Commander George Lawrence of the Custody Services Bureau and Captain Greg Gilbert at MDF for investigation/resolution." (Id.)  However, the parties agree that no such investigation ever took place.  (Compl. at 10; Rubin Decl. ¶ 6.)

On July 22, 2005, Plaintiff filed a state petition for a writ of habeas corpus in the Contra Costa County Superior Court.  The petition was denied on September 8, 2005.  (Attach. to Compl., Order Denying Petition for Writ of Habeas Corpus dated Sept. 8, 2005.)  In his petition, Plaintiff alleged a "perfect example of abuse" relating to "his attempt to see mental health staff in February, 2005" when he was "mistreated by deputies after he was pressured into saying he wanted to hurt himself so he could see someone from the mental health staff." (Id. at 2.)  Included in Plaintiff's prayer for relief were requests for proper training of MDF staff on how to deal with mentally ill inmates, and for individual and group therapy for inmates.  (Id.)  In denying his petition, the court stated that it would not "micro-manage the mental health unit at MDF," and that "assuming the petition [was] construed as a request for declaratory relief, the petition fail[ed] to state facts sufficient to support such relief." (Id.)

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the

6

evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991).  A complete failure of proof concerning an essential element of the non-moving

7

party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

DISCUSSION

I. Exhaustion

A. Legal Standard

The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Non-exhaustion under § 1997e(a) is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 922-23 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to plead or demonstrate exhaustion in their complaints. Jones, 127 S. Ct. at 921-22. Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

A prisoner's concession of non-exhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies. Wyatt, 315 F.3d at 1120. Accordingly, a claim may be dismissed without prejudice if it is clear from the record that the prisoner has conceded that he did not exhaust administrative remedies. See id.

8

Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." Id. Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. Id. at 2382-83 (citing Booth, 532 U.S. at 734).

The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Woodford, 126 S. Ct. at 2387.

When no other administrative remedy is available, however, the exhaustion requirement is deemed fulfilled. See Booth, 532 U.S. at 736 n.4. The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. Brown, 422 F.3d at 934-35. For example, a prisoner need not exhaust further levels of review once he has either received all the remedies that are available, or been reliably informed by an administrator that no more remedies are available. Id. at 935. In Brown, an inmate complaining about staff misconduct was deemed to have exhausted all available remedies because, once an investigation had been ordered at the second formal level under California's staff complaint process, the authorities lacked any remaining power to act on the subject of the complaint. Id. at 937-40 (citing Booth, 532 U.S. at 736 n.4). By contrast, an inmate was deemed not to have exhausted all available remedies where he was informed at the second formal level that his administrative appeal would be treated as a staff complaint, that

9

any non-staff claims should be separately appealed, that further review was available if he was dissatisfied, and that his appeal was denied. Id. at 940-43.

B. Analysis

In support of their allegation that Plaintiff's excessive force claim is unexhausted, Defendants argue that Plaintiff only filed a "request" and never filed a "grievance." Defendants' argument is premised on a narrow reading of Plaintiff's inmate request form, causing them to process it as a request instead of a grievance.

The Ninth Circuit, however, has held that pro se prisoner plaintiffs should not be held to technical pleading requirements. Wyatt, 315 F.3d at 1119. Just as their complaints must be liberally construed, see Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988), their prison grievances -- which under the PLRA are prerequisites to filing civil rights complaints -- should be liberally construed as well. As long as the grievances fairly put the defendants on notice of the wrong the prisoner claims to have suffered and the sort of relief he seeks, so that the defendants have a fair opportunity to address and resolve the problem before the prisoner turns to federal court, the exhaustion requirement should be deemed satisfied. Cf. B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002) (in the Title VII context, holding that administrative complaints must be construed "with the utmost liberality since they are made by those unschooled in the technicalities of formal pleading") (internal quotation marks omitted).

Here, Defendants do not argue that Plaintiff's inmate request

10

form failed fairly to put them on notice about the alleged use of excessive force on February 9, 2005. Plaintiff stated on the form that he was "slammed for no reason" and that "the deputy also used [his] body and head to open the door." (Rubin Decl., Ex. C.) While Plaintiff did not specifically name Defendants Gray and Foley, he complied with the grievance procedure by alerting MDF staff to a problem, which is all that is required by the PLRA to "properly exhaust." Jones v. Bock, 127 S. Ct. 910, 922-23 (2007) (exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances).

Even if his allegations were considered a grievance, Defendants argue, he did not appeal the disposition. In the inmate request form, Plaintiff asked to "see some one [sic] A.S.A.P." and stated "something bad is going to happen." Plaintiff's inmate request form specified that he wanted to be seen by "mental health;" however, it was within MDF staff's discretion to determine a proper remedy. They transferred Plaintiff to the M module. Plaintiff could not pursue his grievance because they did not indicate that this was an appealable decision; therefore, he had no further obligation to exhaust. See Brown, 422 F.3d at 934-35 (the obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance). The Court notes that Plaintiff turned to different avenues to present his excessive force claim. He wrote a letter to internal affairs, which was forwarded to MDF staff. He also filed a state habeas petition relating to MDF staff's deliberate indifference to his mental health needs, which included the same excessive force allegations and requested proper training

11

of MDF staff on how to deal with mentally ill inmates.  The Court concludes that Plaintiff substantially complied with the grievance procedure at MDF and exhausted his administrative remedies as to his excessive force claim.  See also Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999) (holding that substantial compliance with prison grievance procedure satisfies PLRA exhaustion requirement).

Having reviewed the parties' pleadings and evidence in support of and in opposition to the motion for summary judgment, the Court concludes that Defendants failed to meet their burden of proving that Plaintiff did not exhaust all available administrative remedies with respect to his excessive force claim stemming from the incident on February 9, 2005.  Accordingly, Defendants are not entitled to summary judgment on this basis.

II.  Excessive Force Claim

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment.[3]  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979)); see Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) ("The Due Process clause protects pretrial detainees from the

---

[3] Defendants have incorrectly cited the Fourth Amendment in their motion for summary judgment as the applicable constitutional standard for Plaintiff's excessive force claim.  Plaintiff is a post-arraignment pretrial detainee and his excessive force claim is properly analyzed under the Due Process Clause of the Fourteenth Amendment.  Cf. Pierce v. Multnomah County, Oregon, 76 F.3d 1032, 1043 (9th Cir. 1996) ("Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest.").  The result here would be the same under either standard.

use of excessive force that amounts to punishment . . . . <u>Graham</u> therefore explicates the standards applicable to a pretrial detention excessive force claim in this circuit.") (citations omitted). The Ninth Circuit has stated the factors a court should consider in resolving a due process claim alleging excessive force. <u>White v. Roper</u>, 901 F.2d 1501, 1507 (9th Cir. 1990). These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. <u>Id.</u>

To determine whether particular restrictions and conditions accompanying pretrial detention amount to punishment, the Court first looks to whether the disability imposed is for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. <u>See</u> <u>Bell</u>, 441 U.S. at 538. Absent a showing of an express intent to punish, whether a restriction amounts to punishment will generally turn on whether there is an alternative, rational purpose for the restriction, and whether the restriction then appears excessive in relation to that purpose. <u>See id.</u> If a restriction or condition is not reasonably related to a legitimate goal, i.e., if it is arbitrary or purposeless, the Court may infer that the purpose of the action is punishment. <u>See id.</u> at 539.

Defendants contend in their motion for summary judgment that Plaintiff has not raised a triable issue of fact as to whether Defendants' use of force amounts to punishment. Defendant Foley asserts that he "used only that level of force that [he] perceived necessary under the circumstances to maintain control over

13

[Plaintiff] during escort." (Foley Decl. ¶ 8.) Defendant Gray claims that he "did not use any force with [Plaintiff] other than that required to assist him to his feet." (Gray Decl. ¶ 5.) In support of their claims, Defendants argue that there is no evidence showing that their use of force was excessive under the circumstances or that Plaintiff was injured as a result of their actions. A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995); see also Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's amended complaint as opposing affidavit). Here, Plaintiff's complaint was signed under penalty of perjury. The Court on summary judgment must assume the truth of Plaintiff's verified pleadings. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citing T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors, Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)). Plaintiff contends in his complaint that there was no provocation for Defendants' use of force. (Compl. at 6.) He claims that Defendant Foley slammed his head into the door, slammed his body to the ground and ground his face into the floor; and that he was punched in the back by either Defendant Foley or Defendant Gray. (Id. at 7.)

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact remain. Assuming the truth of Plaintiff's pleadings, evidence produced by Defendants conflicts with Plaintiff's evidence with respect to at least two questions of fact. First, a genuine issue of material

14

fact exists regarding whether Plaintiff was resistant or combative during escort such that Defendants' application of force was necessary.  Second, assuming some force was warranted, there is a material issue of fact regarding whether Defendants' force was applied in a good faith effort to maintain and restore discipline. See White, 901 F.2d at 1507.  A reasonable jury, drawing inferences from facts in the light most favorable to Plaintiff, could find that Defendants' use of force amounts to punishment because it was not reasonably related to a rational alternative purpose, or because it was excessive in relation to that purpose.  See Bell, 441 U.S. at 538.  Accordingly, the Court concludes that Plaintiff has set forth "specific facts showing that there is a genuine issue for trial" and, therefore, Defendants are not entitled to summary judgment as a matter of law.  Celotex, 477 US at 324.

In the alternative, Defendants claim that they are entitled to qualified immunity.

Under Saucier v. Katz, 533 U.S. 194, 201 (2001), the Court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment.  The Court first faces "this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  If the Court determines that a constitutional right has been violated, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  In the excessive force context, the Court first makes an inquiry into the objective reasonableness

15

of the officer's belief in the necessity of his actions; the Court next makes an inquiry into the objective reasonableness of the officer's belief in the legality of his actions. <u>Wilkins v. City of Oakland</u>, 350 F.3d 949, 954-55 (9th Cir. 2003). The qualified immunity analysis does not take "20/20 vision of hindsight" into account, but rather gives deference to the judgment of reasonable officers at the time of the occurrence. <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).

The Court cannot decide whether Defendants are entitled to qualified immunity because there is a genuine, material issue "relating to the historical facts" regarding Defendants' conduct and Plaintiff's injuries, and "such questions of fact are for the jury to determine." <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>, 70 F.3d 1095, 1099 (9th Cir. 1995). The jury must decide the disputed "foundational" or "historical" facts that underlie the determination of qualified immunity. See <u>Acosta v. City and County of San Francisco</u>, 83 F.3d 1143, 1147-48 (9th Cir. 1996) (district court erred in granting defendant qualified immunity based on its own factual findings contrary to jury's). If Defendants' use of force on Plaintiff was unnecessary, and they knowingly violated the law by using force that amounts to punishment, Defendants would not be entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons,

1.  The Court DENIES Defendants' request to dismiss Plaintiff's excessive force claim for failure to exhaust administrative remedies.

2.  The Court DENIES Defendants' motion for summary judgment

(docket no. 28).

3. Unless this case can be settled it will have to be tried.

4. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner settlement proceedings. The present case will be REFERRED to Magistrate Judge Vadas for settlement proceedings. The proceedings will consist of one or more conferences as determined by Magistrate Judge Vadas. The conferences may be conducted at Mule Creek State Prison, and Defendants and/or their representative shall attend in person, or may contact Magistrate Judge Vadas to seek permission to attend by videoconferencing, if available, or by telephone.

The conference shall take place within <u>one hundred twenty (120) days</u> after the date of this Order. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within <u>ten (10) days</u> after the conclusion of the conference, file with the Court a report regarding the conference.

The Clerk of the Court shall provide a copy of this Order, and copies of documents from the court file that are not accessible electronically, to Magistrate Judge Vadas.

5. This Order terminates Docket no. 28.

IT IS SO ORDERED.

DATED: 9/27/07

CLAUDIA WILKEN
United States District Judge

P:\PRO-SE\CW\CR.05\Guillory4395.MSJ.frm            17

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

GUILLORY,

         Plaintiff,

v.

CONTRA COSTA SHERIFF'S DEPARTMENT et al,

         Defendant.

Case Number: CV05-04395 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 27, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Andrew S. Guillory F-03860
Mule Creek State Prison
C-13-140-UP
P.O. Box 409060
Ione, CA 95640

Monika L. Cooper
County of Contra Costa
651 Pine Street
9th Floor
Martinez, CA 94553

Dated: September 27, 2007

         Richard W. Wieking, Clerk
         By: Sheilah Cahill, Deputy Clerk